CAZIER v. MACKIE–LOVEJOY MFG. CO. et al.*

(Circuit Court of Appeals, Seventh Circuit. April 11, 1905.)

No. 1,117.

1. PATENTS—INFRINGEMENT—SUBSTITUTION OF PARTS.

Where the real invention covered by a patent lies in one element of a combination, the others being old, and material only in putting into use that which is new, one who appropriates such novel feature cannot avoid infringement by substituting a different form of one of the nonessential parts.

2. SAME—TROUSERS-HANGER.

The Cazier patent, No. 696,940, for a trousers-hanger having the clamping-jaws of spring metal arched so as to engage the fabric near the ends and stretch the same in closing together, discloses invention in such feature, and is valid. Claim 5, also, *held* infringed.

3. SAME—INFRINGEMENT BY CORPORATION—LIABILITY OF OFFICERS.

Infringement by a corporation gives no right of action against one of its officers individually, unless he has acted beyond the ordinary scope of his office.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 459.]

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

Appellant failed in his suit to enjoin infringement of letters patent No. 696,940, issued to him on April 8, 1902, for a trousers-hanger.

The claim said to be infringed is the fifth, as follows:

"(5) A trousers-hanger comprising two opposed elongated clamping-jaws formed of spring-metal strips, arched from end to end so as to engage the interposed fabric near their ends, said jaws being adapted in closing together to stretch the fabric in the direction of the length of the jaws, a V-shaped suspending-spring, upon the ends of which said clamping-jaws are mounted, a hook at the apex of the suspending-spring, and a link or clasp adapted to slide over the arms of the suspending-spring to confine the same and hold the jaws closed upon the fabric."

The record contains the following prior patents: No. 36,100, August, 1862, to Meacham; No. 233,964, November, 1885, to Bear; No. 422,059, February, 1890, to Nichols; British No. 6,866, to Killick, 1889; British No. 453, to Burden, 1890; British No. 8,670, to White, 1896; and Swiss No. 3,253, to Schweizer, 1891.

Other facts are stated in the opinion.

---

*Rehearing denied May 11, 1905.

De Witt C. Tanner, for appellant.

Thomas F. Sheridan, for appellees.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

BAKER, Circuit Judge. The hook, the suspending spring, and the locking link, in combination with clamping jaws for trousers-hangers, were all old. The novelty of this claim, if any exists, must be found in the particular clamping jaws. Schweizer and Killick are the strongest references. Schweizer used wooden clamping jaws, arched or hollowed out in the middle, for the purpose of accommodating the seams of the trousers. Killick disclosed clamping jaws of sheet metal—straight strips except for a rectangular recess at the center for accommodating the seams. He also claimed wooden jaws with the same recess. Neither of these patents mentions any spring action. It is manifest that, if the arch of these reference jaws were flattened by pressure at the center, the ends would spread apart. The clamping jaws of the claim in suit are required to be of spring metal, arched from end to end so as to engage the interposed fabric near their ends. As the arch is flattened, the bearing surface is gradually increased, and the elongation of the jaws smooths out the ends of the trousers legs. The construction was new; the result was new; and the claim evinces, we think, an original idea, neither a plagiarism nor a mere selecting and combining of others' thoughts.

Appellees' expert denies the utility of clamping jaws "adapted, in closing together, to stretch the fabric in the direction of the length of the jaws." Overstretching would be injurious, but the amount performed by appellant's device, we are satisfied, is advantageous. The record shows a large and prosperous business built up on appellant's invention. And the appellee company, failing to use any of the older forms of clamping jaws, and seizing upon appellant's success, is hardly in a position to question the utility of the novel feature.

We have carefully examined the file wrapper and contents, and find nothing therein to limit the claim to less than its obvious reading. Acquiescence in the rejection of "arched clamping jaws" is no graver than the concession in appellant's specification that "the arched form of the clamping jaws is not broadly new." Both were required by the prior art. But that could not prevent appellant from making a narrower claim. And there is no occasion for appellant to seek to enlarge the claim in suit or to invoke the doctrine of equivalents with respect to the clamping jaws, for the appellee company has them identically.

At first the appellee company made and sold an exact copy of appellant's device in all of its parts. Before suit was brought, a change was made; and it is contended that this change obviates infringement. Instead of appellant's V-shaped suspending spring, the appellee company uses V-shaped suspending arms, hinged at their apex. In Killick's patent, both forms of suspending arms are shown. In the operation of a trousers-hanger both perform

these essential services: At their apex they unite with the hook by which the whole device, with the trousers, is hung up; at their lower ends they sustain the clamping-jaws within which the trousers legs are grasped; and along their diverging sides works the locking link by which the jaws are held firmly closed. Killick disclosed an incidental superiority in having at the apex a spring instead of a hinge, namely, that the spring "keeps the jaws open for the reception of the trousers."

In claim 5, appellant's whole invention lay, it must be remembered, in the novel form and function of his clamping jaws. Having devised them, he could go to Killick, say, for the other elements of the combination, the hook, the suspending arms, and the locking link—old elements that were material only to the putting into use of the real invention. Appellant took Killick's preferred form of suspending arms—those with a spring instead of a hinge. May the appellee company appropriate the novel clamping jaws by using with them the less desirable form of suspending arms? We think not; most decidedly not. To hold otherwise would be to rob an inventor by a blind literalism.

The case is quite similar in this aspect to that of Adam v. Folger, 120 Fed. 260, 56 C. C. A. 540. One element in Folger's combination was "a supplemental regulating valve arranged in the plug of the main valve." Folger's invention lay in conceiving and putting into workable form "the idea of regulating separately the flow of the water while preserving the unity of action of the supply valves for water and gas." The real invention could be put to use, but in a less desirable way, by arranging the supplemental regulating valve (which was essential) outside of the plug of the main valve. But we held that such a change did not avoid infringement, saying:

"It is well settled that there is no infringement if any one of the material parts of the combination is omitted, and that a patentee will not be heard to deny the materiality of any element included in his combination claim. * * * But form, location, and sequence of elements are all immaterial, unless form or location or sequence is essential to the result, or indispensable, by reason of the state of the art, to the novelty of the claim."

Here, the invention consists not at all in the form of the suspending arms, and can be utilized with either form. See also King Ax Co. v. Hubbard, 97 Fed. 795, 38 C. C. A. 423.

The appellee company, a corporation, can act only through its officers and agents. We find nothing in the record to show that the appellee Deknatel acted beyond the ordinary scope of his office. No cause of action against him is made out. United Nickel Co. v. Worthington (C. C.) 13 Fed. 392; Hose Co. v. Star Rubber Co. (C. C.) 40 Fed. 168; Hutter v. De Q. Bottle Stopper Co., 128 Fed. 283, 62 C. C. A. 652.

As to the appellee company the decree is reversed, with the direction to enter a decree in appellant's favor for an injunction and an accounting.